STERLING DRUG, INC., a corporation of the State of Delaware, and WINTHROP LABORATORIES, INC., a corporation of the State of Delaware, Defendants-Below,

Appellants,

*vs.*

CITY BANK FARMERS TRUST Co., a New York corporation, Executor of the Estate of B. Thurber Guild, Deceased, Plaintiff-Below,

Appellee.

*Supreme Court on Appeal, July 15, 1959.*

*Henry M. Canby,* of Richards, Layton & Finger, Wilmington, and *Mathias F. Correa,* of Cahill, Gordon, Reindel & Ohl, New York City, of counsel, for Sterling Drug Inc. and Winthrop Laboratories.

*Herbert L. Cobin,* Wilmington, and *William D. Denson,* of Morgan, Finnegan, Durham & Pine, New York City, of counsel, for City Bank Farmers Trust Co.

SOUTHERLAND, C. J., and WOLCOTT and BRAMHALL, JJ., sitting.

WOLCOTT, Justice : This is an appeal from an order of the Vice-Chancellor denying the defendants' motion for summary judgment.

The action is for an accounting of royalties due the plaintiff. The plaintiff,[1] the owner of a patent for a cleansing substance for sensitive skin, granted the defendants an exclusive license of the patent. The license agreement provided for the payment to the plaintiff annually of 5% of the net receipts of all sales made by defendants of the licensed product, provided, however, that no royalties, with the exception of a minimum annual royalty of $3,000, would be due the plaintiff, unless the defendants had derived a net profit from the sales of the licensed product. The agreement provided that "net profit" should be determined in accordance with the defendants' usual accounting methods and procedures. In no event was the royalty to exceed one-third of the net profit.

The agreement gave the defendants the right to terminate upon sixty days notice, with the proviso that if at the time of termination the defendants were obligated to third parties with respect to the licensed subject matter, the defendants had the right to retain such

---

1. Plaintiff having died, his executor has been substituted as plaintiff.

rights under the agreement as in their sole judgment were necessary to enable them to fulfill their obligations to such third parties.

The defendants paid royalties to the plaintiff for the years 1950 through 1956. For 1950-51 the $3,000 minimum royalty was paid. In 1952 royalties in the amount of $7,192.83 were paid purportedly as 5% of the net profit of the sale of the licensed product. The royalty amounts thus paid increased annually until in 1956 the sum of $40,370.41 was paid the plaintiff.

In his complaint the plaintiff alleged two causes of action. The first was for an accounting from the defendants of the amounts of royalties due, and for a judgment in the amount found due. The second sought a cancellation of the executory portion of the agreement on the ground of lack of mutuality in the termination provision.

The defendants did not answer the complaint, but upon affidavits filed moved for summary judgment upon the grounds that the plaintiff's claim for royalties was barred by the defenses of accord and satisfaction, account stated, and as to royalties due prior to July 1, 1953, by the statute of limitations and laches.

The defenses raised of accord and satisfaction, and account stated, under the circumstances of this case, are the same and were so treated by the Vice-Chancellor. They are based upon the facts, as shown by defendants' affidavits, that the checks paying each yearly royalty were accompanied by letters of transmittal enclosing a "royalty statement" which purported to show the royalties due under the license agreement, and by a statement of the defendants' accountants to the effect that the amounts paid "fairly present the royalties payable."

Based upon these circumstances, the defendants argue that the acceptance and cashing of the checks by the plaintiff amounted to an accord and satisfaction between the parties of any disputed amount of royalty. The defendants argue that the circumstances under which the checks were transmitted to the plaintiff clearly indicate that the payments were made upon the condition that acceptances of the amounts would be a complete discharge of the defendants from further liability.

The plaintiff filed counter-affidavits asserting that the acceptance of the royalty checks by him did not amount to an accord and satisfaction for the reason that no clear condition was attached to the acceptance of the checks, and that, as a matter of fact, he continuously voiced objection to officials of the defendants as to the amounts of royalty paid him. He also asserted that he had continuously sought access to the defendants' books in order to compute the royalty due, but that defendants had just as continuously refused to permit him to inspect their books.

The plaintiff argues that the defendants' operation—that is, the manufacture and sale of various drugs—was of great complexity and of such nature as to require an accounting between the parties in order to determine the amounts of royalties due. As an example, he points to the fact that the total sales of the defendants were in excess of $200,000,000 of which something in excess of $11,000,000 represented sales of the licensed product, and that the cost of selling of the licensed product necessitates an apportionment of various items of costs between the licensed product and the defendants' total sales. Thus, it is argued, an accounting is required for the license agreement requires the determination of the "net profit" of the sales of the licensed product as the basis upon which the royalties due the plaintiff are to be determined.

The Vice-Chancellor denied the motion for summary judgment on the claim for royalties because it was not clear to him that the tender of the royalty checks by defendants to the plaintiff was coupled with an express or tacit condition that acceptance of the checks by plaintiff would constitute payment in full of the defendants' obligation. He found that the circumstances surrounding the royalty payments were ambiguous and required the establishment of the facts. Furthermore, he noted the plaintiff's claim that throughout he had continuously protested the amounts paid him. These considerations led the Vice-Chancellor to the conclusion that a hearing on the merits was necessary.

The motion for summary judgment with respect to the claim for cancellation was denied on the ground that there was a need to hear

the facts concerning the matter, particularly as to any sub-licensing obligations the defendants had.

From the order denying the motion for summary judgment, the defendants appealed. The plaintiff has moved to dismiss the appeal on the ground that the order appealed has not established any rights or determined any substantial issue in the cause, and is therefore not an appealable order.

■■ This court may review interlocutory orders in Chancery when such orders determine substantial issues and establish legal rights. Interlocutory orders, on the other hand, which are merely a procedural furtherance of the cause, are not appealable. *Tatem v. Gilpin,* 1 *Del.Ch.* 13; *DuPont v. DuPont,* 32 *Del.Ch.* 405, 82 *A.2d* 376; *Martin v. American Potash & Chemical Corp.,* 33 *Del.Ch.* 234, 92 *A.2d* 295, 35 *A.L.R.2d* 1140. We, therefore, turn to the denial by the Vice-Chancellor of the motion for summary judgment to determine whether or not his order settled any substantial issue or determined any legal right.

■■ We think the Vice-Chancellor decided nothing except that he wanted to have a trial on the merits of the cause, because of the doubts the affidavits submitted by both sides raised in his mind as to what the facts actually were. It is therefore clear that his holding was determinative of nothing except that there had to be a trial. Since, in his view, he found a material issue of fact unresolved by the affidavits, he was correct in denying the defendants' motion for summary judgment. *State ex rel. Mitchell v. Wolcott,* 7 *Terry* 362, 83 *A.2d* 759; *Gottlieb v. Heyden Chemical Corp.,* 33 *Del.Ch.* 82, 90 *A.2d* 660.

Defendants argue, however, that the denial by the Vice-Chancellor of summary judgment amounts to an adjudication that *Hudson v. Yonkers,* 258 *N.Y.* 168, 179 *N.E.* 373, 80 *A.L.R.* 1052, does not bar the first cause of action as a matter of law, the parties agreeing that this case is controlling upon the defense of accord and satisfaction. Thus, it is argued that the Vice-Chancellor determined adversely to the defendants a substantial issue in the cause.

The difficulty with the argument is simply that the Vice-Chancellor decided no such thing. He recognized the agreement of the parties that the Hudson case was controlling, but he decided nothing with respect thereto because, in his opinion, the facts had not been established to which the rule of the Hudson case was to apply. Under the circumstances, we think that his denial of summary judgment was not a decision limiting or interpreting the rule of the Hudson case in any respect.

The defendants also argue that the denial of summary judgment by the Vice-Chancellor was a decision by him on the defense of the statute of limitations. This is just not so because he made no ruling whatsoever upon the defense of the statute of limitations.

We think the Vice-Chancellor in his discretion concluded that because of the factual disputes between the parties, he preferred to decide all of the questions presented by the complaint only after having the facts developed in a full hearing. Under the circumstances, we think that the conclusion to postpone decision on all questions until after full hearing fell within the field of his discretion. Likewise, we can find no abuse of that discretion in so deciding.

We will, accordingly, dismiss the present appeal. In so doing, however, we reserve to the defendants the right to raise anew before the Vice-Chancellor the arguments made to us. The defendants are free to do so because those points have not as yet been decided.

We think it not amiss to observe that we have noted the recent tendency on the part of the bar to assume that all denials of motions for summary judgment are appealable. Under some circumstances, when rights are adjudicated, of course, such denials are appealable, but we suppose that, generally speaking, the usual denial of summary judgment adjudicates no legal rights. Such a result is the exception rather than the rule. Particularly is this so when summary judgment is denied because of the necessity of finding out what the facts are.