COURT OF CHANCERY
OF THE
STATE OF DELAWARE

MORGAN T. ZURN
VICE CHANCELLOR

LEONARD L. WILLIAMS JUSTICE CENTER
500 N. KING STREET, SUITE 11400
WILMINGTON, DELAWARE 19801-3734

June 27, 2025

John L. Reed, Esquire
DLA Piper LLP (US)
1201 North Market Street, Suite 2100
Wilmington, DE  19801

Andrew L. Cole, Esquire
Cole Schotz P.C.
500 Delaware Avenue, Suite 1410
Wilmington, DE  19801

RE:  ***Fortiline, Inc., et al. v. Hayne McCall, et al.,***
Civil Action No. 2024-0211-MTZ

Dear Counsel:

A company and its parent contend a company founder left and set up a competing business that poached half the company's workforce. The founder and many of those employees are subject to restrictive covenants, which the company and its parent tried to enforce. But at the preliminary injunction stage, I held those restrictive covenants were unenforceable because their breadth was unsupported by the plaintiffs' legitimate business interests.[1]

Both the plaintiffs and the defendants regrouped. The plaintiffs amended their complaint to seek damages instead of injunctive relief.[2] The defendants moved for

---

[1] Docket Item ("D.I.") 175 [hereinafter "PI Order"].

[2] D.I. 184 [hereinafter "SAC"].

summary judgment on the grounds that the covenants are unenforceable.[3] This letter addresses that motion.

## I.  BACKGROUND

The defendants are former employees of plaintiff Fortiline, Inc.  In 2016, Fortiline's parent was acquired by Patriot Supply Holdings, Inc. ("PSH," and together with Fortiline, "Plaintiffs").[4]  The defendants entered Award Agreements granting them options in PSH pursuant to a 2012 stock option plan (the "Plan").[5] The Award Agreements contain restrictive covenants:

- A confidentiality provision agreeing, indefinitely, not to disclose the confidential information of PSH, its Affiliates, "and their respective predecessors."[6]

- A noncompete lasting one year after termination of employment prohibiting the employee from engaging in "Business" anywhere in the United States, or assisting or investing in anyone who competes with the Business.[7]

---

[3] D.I. 204; D.I. 215 [hereinafter "DOB"].

[4] PI Order at 1–2.

[5] D.I. 141 Ex. 4 [hereinafter "Award Agr."]; D.I. 141 Ex. 5 [hereinafter "Plan"].

[6] Award Agr. § 7.

   "Affiliate" is defined as any entity or person that PSH controls, is controlled by, or is under common control with, directly or indirectly, through one or more intermediaries, with "control" meaning "the possession, directly or indirectly, of the power to direct or cause the direction of the management or policies . . . whether through the ownership of voting securities, by agreement or otherwise."  Plan § 2.2.

[7] Award Agr. § 8.

- A nonsolicitation lasting one year after termination of employment prohibiting the employee from soliciting customers, suppliers, or other parties with whom PSH or any Affiliate does business, and from soliciting the officers, employees, representatives, or agents of PSH or any Affiliate.[8]

Section 12 of the Award Agreements states that if any of the restrictive covenants are unreasonable, the parties agree to the maximum of what is reasonable.[9]

Section 12 also provides that

> [b]ecause the [defendants'] services are unique and because the [defendants have] access to Confidential Information, the parties hereto agree that money damages would not be an adequate remedy for any breach of this Agreement.  Therefore, in the event of a breach . . . [PSH] or its successors or assigns may . . . apply to any court of competent jurisdiction for specific performance and/or injunctive or other relief . . . .[10]

---

"Business" is defined as "the business of [PSH] and its Subsidiaries as currently conducted on the date hereof, as conducted within the five (5) years prior to the date hereof, or which the Board has authorized the Company to develop or pursue (by acquisition or otherwise)." *Id.* § 17(b).

A "Subsidiary" is any entity in which PSH owns, directly or indirectly, more than fifty percent of the equity or voting power.  Plan § 2.27.

[8] Award Agr. § 9.

[9] *Id.* § 12.

[10] *Id.*

The Award Agreements incorporate the Plan's provisions.[11] Section 14.10 of the Plan is a severability provision.[12]

The Plan's stated purpose "is to attract, retain and motivate [employees], and to promote the success of [PSH's] business by providing them with appropriate incentives and rewards either through a proprietary interest in the long-term success of [PSH] or compensation based on fulfilling certain performance goals."[13]

Delaware courts review restrictive covenants for reasonableness. On Plaintiffs' motion for a preliminary injunction, I held the restrictive covenants were unreasonably broad and unenforceable (the "PI Order").[14] Plaintiffs had shown "no legitimate business interest that would justify restraining Defendants from competing with and soliciting from not just Fortiline, but also any of the other businesses under the PSH umbrella, in completely different business sectors and

---

[11] *Id.* at 1 ("[T]he Committee has determined that it would be in the best interests of [PSH] and its stockholders to grant the option provided for herein to the Participant pursuant to the Plan and the terms set forth herein.").

[12] Plan § 14.10.

[13] *Id.* § 1.2.

[14] PI Order at 12.

geographic locations."[15]  I declined to blue-pencil the covenants to apply just to Fortiline.[16]

On October 18, 2024, Plaintiffs filed their second amended complaint seeking damages—instead of injunctive relief—for the defendants' breaches of the restrictive covenants.[17]  They also brought an alternative unjust enrichment claim against all defendants and a claim for breach of a separate set of restrictive covenants against one of the defendants.[18]  I dismissed those additional claims on April 26, 2025.[19]  This letter addresses the defendants' motion for summary judgment on the only remaining claims, which seek damages against the defendants for breach of the restrictive covenants contained in the Award Agreements.

## II.    ANALYSIS

This Court will grant a motion for summary judgment where there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law.[20]  The movant has the burden of showing entitlement to judgment as

---

[15] *Id.*

[16] *Id.* at 11 n.46.

[17] *See generally* SAC.

[18] *Id.* ¶¶ 182–89, 308–19.

[19] D.I. 225.

[20] Ct. Ch. R. 56(c).

a matter of law; then the nonmovant has the burden of demonstrating a genuine issue of material fact precludes judgment for the movant.[21] "Summary judgment must be granted when the nonmovant fails to respond to facts which the movant has placed in the record which entitle him to summary judgment."[22] The Court views the facts in the light most favorable to the nonmoving party.[23]

### A. The Defendants Have Shown Entitlement To Judgment As A Matter Of Law.

With the PI Order in hand, the defendants moved for summary judgment on Plaintiffs' damages claims on the grounds that the restrictive covenants are unenforceable.[24] The motion is based on the same discovery record as the PI Order.[25] In the typical procedural posture, with the law of the case on their side, the defendants would have a slam dunk.

This is not the typical procedural posture. After the preliminary injunction was denied, Plaintiffs amended their complaint: they assert the same claims for breach of the restrictive covenants, but now ask for damages instead of an injunction.

---

[21] *Deloitte LLP v. Flanagan*, 2009 WL 5200657, at *3 (Del. Ch. Dec. 29, 2009).

[22] *Gabelli & Co., Inc. v. Liggett Gp., Inc.*, 1983 WL 18015, at *4 (Del. Ch. Mar. 2, 1983), *aff'd*, 479 A.2d 276 (Del. 1984).

[23] *Weil v. VEREIT Operating P'ship, L.P.*, 2018 WL 834428, at *3 (Del. Ch. Feb. 13, 2018).

[24] D.I. 204; DOB at 25.

[25] PI Order at 12; D.I. 220 at 7, 18 [hereinafter "PAB"].

In opposing summary judgment, Plaintiffs make an argument new to this case and, as far as I can tell, to Delaware jurisprudence.

They argue that where a claim for breach of a restrictive covenant seeks only damages, and not injunctive relief, the restrictive covenant is not subject to review for reasonableness. They point to the Delaware Supreme Court's recent holdings that forfeiture-for-competition provisions are not subject to reasonableness review.[26] And they equate the loss of a supplemental benefit under a forfeiture-for-competition provision to damages for breach of a restrictive covenant.[27]

Plaintiffs' argument runs counter to a core tenet of Delaware law: Delaware enforces contracts as written. Delaware is famously contractarian. "We uphold the freedom of contract and enforce as a matter of *fundamental public policy* the voluntary agreements of sophisticated parties."[28] And we "focus on the actual language agreed to and used" to "promote[] parties' ability to negotiate and shape commercial agreements."[29] The contractarian cases Plaintiffs cite compel treating

---

[26] *Cantor Fitzgerald, L.P. v. Ainslie*, 312 A.3d 674 (Del. 2024); *LKQ Corp. v. Rutledge*, -- A.3d --, 2024 WL 5152746 (Del. 2024).

[27] PAB at 2–3, 36, 39.

[28] *Cantor Fitzgerald*, 312 A.3d at 688–89 (quoting *NAF Hldgs., LLC v. Li & Fung (Trading) Ltd.*, 118 A.3d 175, 180 n.14 (Del. 2015)) (cleaned up).

[29] *Salamone v. Gorman*, 106 A.3d 354, 370 (Del. 2014) (internal quotation marks omitted) (quoting *ev3, Inc. v. Lesh*, 114 A.3d 527, 529 (Del. 2015)).

restrictive covenants and forfeiture-for-competition clauses for what they are, based on what they command from the employee, no matter what the company seeks as a remedy.

In *Cantor Fitzgerald L.P. v. Ainslie*, the partnership agreement bound partners to both restrictive covenants restraining them from competing after they left, and "separate, but overlapping" forfeiture-for-competition provisions allowing the partnership to retain money the former partner would receive unless the partner competed.[30] The restrictive covenants and forfeiture-for-competition provisions "st[ood] on different footing" because the forfeiture-for-competition provisions did not prohibit the former partner from competing.[31] The Delaware Supreme Court explained:

> The distinction between a restrictive non-competition covenant that precludes a former employee from earning a living in his chosen field and an agreement that allows a former partner to compete but at the cost of relinquishing a contingent benefit is, in our observation, significant. In the restrictive-covenant context, the former employee is effectively deprived of his livelihood and, correspondingly, exposed to the risk of serious financial hardship. This gives rise to the strong policy interest that justifies the review of unambiguous contract provisions for reasonableness and a balancing of the equities, two exercises typically foreign to judicial review in contract actions. By contrast, however, forfeiture-for-competition provisions, which, unlike restrictive covenants, are not enforceable through injunctive relief, do not prohibit

---

[30] *Cantor Fitzgerald*, 312 A.3d at 680–81, 684.

[31] *Id.* at 689.

> employees from competing and remaining in their chosen profession, and do not deprive the public of the employee's services, present no such concern. The policy interest that preponderates in the former case is diminished—if it does not vanish—in the latter. To put it another way, the interest to be vindicated when evaluating a covenant that prohibits competition and that might even preclude gainful employment is significantly weakened when competition—often (as in this case) highly remunerative—is permitted.[32]

The Delaware Supreme Court was adamant that Delaware courts should respect the fundamental difference between a restrictive covenant and a forfeiture-for-competition provision: the latter does not restrict competition. While the high court noted a restrictive covenant is "enforceable through injunctive relief,"[33] I read its distinction to be based on what the provisions demand of the employee, not what remedy the company seeks.

Indeed, *Cantor Fitzgerald* differentiates a forfeiture-for-competition provision from a claim for damages based on breach of a restrictive covenant.[34] In *Faw, Casson & Co., LLP v. Halpen*, the Superior Court was asked to enforce a liquidated damages provision coupled to a restrictive covenant, and did so after

---

[32] *Id.* at 691.

[33] *Id.*

[34] *Id.* at 687.

finding the covenant reasonable.[35] *Cantor Fitzgerald* explained *Faw* had no bearing on forfeiture-for-competition provisions.[36]

A few months later, the Delaware Supreme Court re-emphasized that a promise not to compete differs from a promise to give up money upon competing such that only the promise not to compete inspires reasonableness review.[37] *LKQ Corp. v. Rutledge* echoes that a forfeiture-for-competition provision differs from a restrictive covenant in what the employee promises to do, and tells Delaware courts to respect that difference in triggering reasonableness review in equity grants as well as limited partnership agreements.[38] *LKQ* explained that in *Cantor Fitzgerald*, the Delaware Supreme Court

> relied on Delaware decisions that uphold the freedom of contract and enforce as a matter of fundamental public policy the voluntary agreements of sophisticated parties. As we have noted before, respecting private agreements has wealth-creating and peace-inducing effects, which are undercut if citizens cannot rely on the law to enforce their voluntarily-undertaken mutual obligations. Like the anticompetition condition in *Cantor Fitzgerald*'s limited partnership agreement, a restricted stock unit agreement stands on different footing than underlies non-competition covenants because it does not restrict competition or a former employee's ability to work. And like the *Cantor Fitzgerald* partners, if a former employee wishes to compete

---

[35] 2001 WL 985104, at *2–3 (Del. Super. Aug. 7, 2001).

[36] *Cantor Fitzgerald*, 312 A.3d at 687 (citing *Faw*, 2001 WL 985104).

[37] *LKQ*, 2024 WL 5152746, at *4.

[38] *Id.*

with the employer during the relevant time, the employer need not confer the deferred benefit on the former employee, who has agreed to forfeit that benefit upon engaging in competition.[39]

*Cantor Fitzgerald* and *LKQ* are built on Delaware's contractarian principles. These cases pin reasonableness review on what the provision demands of the employee, not what the company seeks as a remedy for its breach.[40] If the provision restrains the employee from work, then reasonableness review kicks in. If it does not—if instead, for example, it allows the employer to retain a benefit the employee would otherwise receive—then courts must enforce that term as written. *Cantor Fitzgerald* and *LKQ* cite the potential for injunctive relief as a reason why restrictive

---

[39] *Id.* (cleaned up).

[40] *Cantor Fitzgerald*, 312 A.3d at 689; *LKQ*, 2024 WL 5152746, at *4 ("Like the anticompetition condition in Cantor Fitzgerald's limited partnership agreement, a restricted stock unit agreement 'stands on different footing than underlies non-competition covenants' because it 'does not restrict competition or a former [employee's] ability to work.'" (quoting *Cantor Fitzgerald*, 312 A.3d at 689)).

covenants warrant reasonableness review.[41] But they impose reasonableness review based on whether the provision itself prohibits competition.[42]

Plaintiffs' argument runs afoul of the contractarian foundations of *Cantor Fitzgerald* and *LKQ*. The fact that Plaintiffs now seek damages, rather than injunctive relief, does not change that they seek to enforce restrictive covenants that prohibit competition. It does not change this Court's mandate to review those covenants for reasonableness.[43] Under that review, I have already held the covenants are overbroad and unenforceable.

Nor is Plaintiffs' requested remedy of damages akin to the contractually mandated return or withholding of a supplemental benefit in *Cantor Fitzgerald* and

---

[41] *See Cantor Fitzgerald*, 312 A.3d at 691 ("[F]orfeiture-for-competition provisions . . . unlike restrictive covenants, are not enforceable through injunctive relief, do not prohibit employees from competing and remaining in their chosen profession, and do not deprive the public of the employee's services . . . ."); *LKQ*, 2024 WL 5152746, at *5 (noting multiple considerations weighing against reasonableness review of forfeiture-for-competition provisions, including that they are not enforceable through injunctive relief and that "[b]usiness entities would be discouraged from offering employees additional benefits if we did not respect their contracts").

[42] *Cantor Fitzgerald*, 312 A.3d at 687 ("[T]he provision at issue here is not a penalty enforced against an employee based on the breach of a restrictive covenant; it is a condition precedent that excuses Cantor Fitzgerald from its duty to pay if the plaintiffs fail to satisfy the condition to which they agreed to be bound in order to receive a deferred financial benefit."); *LKQ*, 2024 WL 5152746, at *4 (explaining *Cantor Fitzgerald* "relied in part on the freedom of contract principles").

[43] PI Order at 12; *see Faw*, 375 A.2d at 466; *McCann Surveyors, Inc. v. Evans*, 611 A.2d 1, 3 (Del. Ch. 1987); *Sunder Energy, LLC v. Jackson*, 305 A.3d 723, 746 (Del. Ch. 2023).

*LKQ*. *Cantor Fitzgerald* distinguished liquidated damages triggered by breach of a restrictive covenant from the loss of a supplemental benefit under a forfeiture-for-competition provision.[44] *LKQ* reaffirmed that distinction.[45]

The distinction is even more pronounced when considering unliquidated damages. Unliquidated damages restore the company to the position it would have been in had the employee kept her promise not to compete. They are awarded by a court upon proof of a breach, as well as proof of injury, causation, and an estimate of damages from the employee's competition.[46] Forfeiture-for-competition provisions deny the employee a set financial benefit if she chooses to compete;[47] the

---

[44] *Cantor Fitzgerald*, 312 A.3d at 687–88 (contrasting *Faw*, 375 A.2d 463, and *Lyons Insurance Agency, Inc. v. Wark*, 2020 WL 429114 (Del. Ch. Jan. 28, 2020)—which "dealt with lawsuits initiated by former employers seeking to enforce liquidated damages provisions contained in employment agreements against former employees"—with *W.R. Berkley Corp. v. Dunai*, 2021 WL 1751347 (D. Del. May 4, 2021), and *W.R. Berkley Corp. v. Hall*, 2005 WL 406348 (Del. Super. Feb. 16, 2005)—which dealt with clawbacks of stock grants if the employee competed); *see Dunai*, 2021 WL 1751347, at *2 (determining a clawback provision was "not a liquidated-damages provision," reasoning the clawback was "not a $200,000 penalty for working for a competitor; it [wa]s returning a supplemental benefit for breaching the terms of a bargain").

[45] *LKQ*, 2024 WL 5152746, at *5 ("In *Cantor Fitzgerald*, we also found inapt our liquidated damages precedent. We held that forfeiture-for-competition provisions are better viewed as conditions precedent to paying future distributions.").

[46] *Fortis Advisors LLC v. Johnson & Johnson*, 2024 WL 4048060, at *35 (Del. Ch. Sept. 4, 2024); *see also Siga Techs., Inc. v. PharmAthene, Inc.*, 132 A.3d 1108, 1111 (Del. 2015).

[47] *See Cantor Fitzgerald*, 312 A.3d at 690.

forfeiture is triggered by a contractually defined condition precedent;[48] and the forfeited amount is predetermined, unrelated to any harm the company may have suffered. A damages award for breach of a restrictive covenant and an order enforcing a forfeiture-for-competition provision both move money around because of employee competition, but those similarities are superficial and, at bottom, irrelevant. The law treats the promises differently because they call for different performance.[49]

In a last attempt to avoid the conclusion that the restrictive covenants are unenforceable, Plaintiffs contend that if the Plan's severability provision were to sever the restrictive covenants from the Award Agreements, "the Award Agreement[s] might reflect waste, which . . . is a major policy reason in the Supreme Court's [*LKQ*] decision."[50] *LKQ* noted "Delaware courts have required stock grants

---

[48] In *Cantor Fitzgerald*, the condition precedent was competitive activity within a specified timeframe. *Id*. at 687.

[49] *Id*. at 687–88; *LKQ*, 2024 WL 5152746, at *5.

[50] PAB at 29 n.12; *see* Plan § 14.10 ("If any provision of the Plan or any Award . . . is deemed to be invalid, illegal, or unenforceable . . . such provision shall be construed or deemed amended to conform to applicable laws, or if it cannot be so construed or deemed amended without . . . materially altering the intent of the Plan or the Award, such provision shall be stricken . . . and the remainder of the Plan and any such Award shall remain in full force and effect.").

In a spinoff from this argument, Plaintiffs assert that the source of unenforceability is the Award Agreements' stipulation of irreparable harm and provision for injunctive

to include conditions ensuring that the grants do not constitute waste or a gift of corporate assets."[51]    Such grants "must contain consideration passing to the corporation, which could take variable forms, such as the retention of services of a valued employee, or the gaining of services of a new employee."[52]  *LKQ* explained that "[a] company must 'reasonably expect to receive the contemplated benefit from the grant of the options.'"[53]

But here, the Plan's terms contradict Plaintiffs' waste theory.  The Plan specified the stock options were not granted solely in exchange for the defendants' promises not to compete; they served to attract employees to PSH and to incentivize high performance by allowing the employees to share in the company's success.[54]

---

relief, not the restrictive covenants, and so those stipulations should be severed, rather than the restrictive covenants.  PAB at 31, 33; *see* Plan § 14.10; Award Agr. §§ 7–9.  But as explained, the problem lies in the restrictive covenants, regardless of whether injunctive relief is sought.  Review of the restrictive covenants is unaffected by provisions stipulating that a breach would cause irreparable harm and calling for injunctive relief.  *AM Gen. Hldgs. LLC v. Renco Gp., Inc.*, 2015 WL 9487922, at *3 (Del. Ch. Dec. 29, 2015) (noting a stipulation to irreparable harm cannot operate to "impair the Court's exercise of its well-established discretionary role in the context of assessing the reasonableness of interim injunctive relief"); *cf. Kodiak Bldg. P'rs, LLC v. Adams*, 2022 WL 5240507 (Del. Ch. Oct. 6, 2022) ("This Court does not skip over applying a common law test simply because one party stipulates the test is not necessary.").

[51] *LKQ*, 2024 WL 5152746, at *5 (quoting *Dunai*, 2021 WL 1751347, at *2).

[52] *Id.* (quoting *Beard v. Elster*, 160 A.2d 731, 735–36 (Del. 1960)).

[53] *Id.* (quoting *Elster*, 160 A.2d at 737).

[54] Plan § 1.2.

Even without the restrictive covenants, the Award Agreements contain the requisite "consideration passing to the corporation."[55] Severing the unenforceable restrictive covenants does not render the option grant wasteful.

And finally, Plaintiffs argue that "even if the Court finds that the Award Agreements are unenforceable on public policy grounds for the purpose of awarding a legal remedy, Plaintiffs are still entitled to restitution from Defendants as a matter of equity."[56] Plaintiffs invoke this Court's ability to award damages in equity where the underlying contract was illegal.[57]

But both parties agree that under the Plan's severability clause, the Award Agreements remain enforceable even if the restrictive covenants are unenforceable.[58] The Award Agreements are not illegal. Even assuming illegality is the same as unenforceability, different rules apply when there is "an illegal term within an otherwise legal agreement."[59] Given that Plaintiffs ignore those rules, I do not address them.

---

[55] *LKQ*, 2024 WL 5152746, at *5 (quoting *Elster*, 160 A.2d at 735–36).

[56] PAB at 46.

[57] *Id.* at 46–47 (citing *Lighthouse Behav. Health Sols., LLC v. Milestone Addiction Counseling, LLC*, 2023 WL 3486671, at *10 (Del. Ch. May 17, 2023)).

[58] DOB at 63; PAB at 16, 29, 32–33, 64.

[59] *Lighthouse Behav. Health Sols.*, 2023 WL 3486671, at *11.

In sum, the defendants have shown they are entitled to judgment as a matter of law. *Cantor Fitzgerald* and *LKQ* require analyzing the provisions for what they are. Seeking damages instead of injunctive relief does not change what they are. Here, the provisions at issue are restrictive covenants that prohibit an employee from competing. They therefore implicate public policy interests that call for reasonableness review. As the PI Order explained, they are unreasonable and unenforceable. Plaintiffs are not entitled to any damages based on breaches of unenforceable restrictive covenants.

### B. Plaintiffs Have Not Shown A Material Issue Of Fact Exists.

As the defendants have established they are entitled to judgment as a matter of law, the burden shifts to Plaintiffs to show that a material issue of fact exists. They must do so with "evidence"—an "affidavit or proof of similar weight."[60] Court of Chancery Rule 56(e) specifies that such an affidavit "shall be made on personal knowledge."[61]

Plaintiffs have received no more discovery since the PI Order: they have no more evidence to submit.[62] They did not submit any affidavits based on personal

---

[60] *Tanzer v. Int'l Gen. Indus., Inc.*, 402 A.2d 382, 385 (Del. Ch. 1979).

[61] Ct. Ch. R. 56(e).

[62] *See* D.I. 209. No notice of service of any responses was docketed.

knowledge. Rather, they submitted the report of their expert, David Lorry.[63] But Lorry's report does not introduce new evidence; it reargues the covenants' reasonableness based on the evidence I considered in the PI Order.[64] Absent new evidence, the report does not introduce any fact issue. Lorry's report is duly noted, but it does not alter my analysis. As explained, the restrictive covenants' breadth is not supported by Plaintiffs' legitimate business interests. The covenants are unenforceable.

## III. CONCLUSION

For these reasons, summary judgment is granted in favor of the defendants on the remaining counts. The parties should confer on a proposed final order and judgment.

Sincerely,

*/s/ Morgan T. Zurn*

Vice Chancellor

---

[63] D.I. 137 Ex. 1. On the defendants' motion, I precluded Lorry's report as untimely for purposes of the preliminary injunction. D.I. 143. The defendants' opening brief "address[es] the opinions in the expert report to the extent Plaintiffs rely on the opinions contained therein in their answering brief," but "do[es] not concede that they are admissible." DOB at 41 n.87; D.I. 223 at 2–7. Because Lorry's report does not create a material fact issue, I do not address its admissibility.

[64] D.I. 137 Ex. 1 ¶ 12 ("Specifically, I have been asked to explain the economic rationale for including PSH and its affiliates in the scope of certain restrictive covenants imposed against former employees of Fortiline.").

MTZ/ms

cc:  All Counsel of Record, via *File & ServeXpress*