**GABELLI & CO., INC. PROFIT SHARING PLAN, Plaintiff,**

v.

**LIGGETT GROUP, INC., Grand Metropolitan Limited, and GM Sub Corporation, Defendants.**

Court of Chancery of Delaware, New Castle County.

Submitted Dec. 18, 1981.

Decided April 8, 1982.

Victor F. Battaglia and Robert K. Beste, Jr., Biggs & Battaglia, Wilmington, Ronald Litowitz, Kreindler & Kreindler, and David Perlmutter, Winer, Neuberger & Sive, New York City, for plaintiff.

R. Franklin Balotti, Richards, Layton & Finger, Wilmington, John L. Warden, and Gandolfo V. DiBlasi, Sullivan & Cromwell, New York City, for defendants Liggett Group, Inc. and GM Sub Corp.

HARNETT, Vice Chancellor.

Defendants-Liggett Group, Inc. ("Liggett") and GM Sub Corporation ("GM Sub") moved to dismiss this action claiming that the complaint fails to state a claim upon which relief may be granted. The gravamen of the suit is whether, under the circumstances, a minority stockholder of a subsidiary corporation—faced with being cashed out by a merger orchestrated by the majority stockholder—may compel payment of a dividend where he alleges breach of fiduciary duty by the parent corporation. For the reasons set forth, I hold that the complaint does not now state a cause of action and therefore grant defendants' motion to dismiss, subject, however to a possible amendment of the complaint.

### I

In disposing of this motion to dismiss, I must rely solely on the complaint,

because—although defendants on their own volition submitted additional materials with their briefs—plaintiff apparently was not given a similar opportunity as required by Chancery Rule 12(c). The factual allegations of the complaint must, therefore, be taken as true and all inferences therefrom construed in plaintiff's favor. *Harman v. Masoneilan Int'l, Inc. et al*, Del.Supr., 442 A.2d 487 (1982); *Laventhol, Krekstein, Horwath & Horwath v. Tuckman*, Del.Supr., 372 A.2d 168 (1976); *Danby v. Osteopathic Hosp. Ass'n*, Del.Ch. 101 A.2d 308 (1953), *aff'd*, Del.Supr., 104 A.2d 903 (1954). And a complaint in a civil action need only give the defendant fair notice of a claim and is to be liberally construed. *Michelson v. Duncan*, Del.Supr., 407 A.2d 211 (1979); *Wier v. Fairfield Galleries, Inc.*, Del.Ch., 377 A.2d 28 (1977).

## II

As alleged in the complaint, the facts are: the plaintiff-Gabelli & Co., Inc. Profit Sharing Plan ("Gabelli") owned 800 shares of Liggett's approximately 8.4 million issued and outstanding common shares before a merger which occurred in August of 1980. Gabelli brought this action just before the merger was to be consummated on its own behalf and on behalf of a class consisting of all persons—other than the defendants—who owned Liggett common stock prior to the merger.

Defendant-Liggett, a Delaware corporation, is a major producer of cigarettes. Defendant-GM Sub, also a Delaware corporation, is an indirect wholly-owned subsidiary of defendant-Grand Metropolitan Limited ("Grand Met"), an English corporation.

GM Sub was formed in March of 1980 for the purpose of purchasing shares of Liggett on Grand Met's behalf by way of a tender offer. Initially, GM Sub offered $50 per share but subsequently increased the offer to $69 per share to counter a competing offer by Standard Brands, Inc. Liggett's board approved this latter offer as fair and recommended it to the shareholders. As a result, approximately 85% of Liggett's shareholders accepted the tender offer and tendered their shares to GM Sub in the spring of 1980.

After the tender offer was completed, Grand Met—through its newly acquired majority position—proposed a plan of merger in which Liggett would be merged into either Grand Met or a wholly-owned subsidiary. The minority shareholders were to be cashed out at $69 per share—the amount of the earlier tender offer. The merger date was set for early in August of 1980.

At this time, Liggett was nearing the time period when it had customarily declared a regular quarterly dividend of $.625 per share. For the past sixteen years the Board of Directors had declared a dividend in late July, set an early August record date, and made payment in late August or early September. In July of 1980, however, the dividend was not declared. On July 16, 1980, the plaintiff brought this action asking this Court to compel Liggett's Board to declare the traditional dividend. Shortly thereafter—on August 7, 1980—the minority shareholders were cashed out of their equity interest in Liggett by the merger. Significantly, the complaint did not request an injunction against the consummation of the merger nor attack the adequacy of the price offered. Nor has plaintiff sought to do so—even after defendants have pointed out the omission.

## III

The complaint alleges that Grand Met, as the majority stockholder of the parent corporation, breached the fiduciary duty it owed to the minority stockholders of its subsidiary Liggett. The critical allegations of the complaint are:

"19. Grand Met, by reason of its majority and controlling position in Liggett, owes a fiduciary duty to Liggett's minority shareholders.

20. Grand Met is breaching its fiduciary duty to Liggett's minority shareholders by causing Liggett to eliminate its regular dividend to enable Grand Met to obtain the Liggett dividend money for itself upon the merger of Liggett and Grand Met."

Defendants, on the other hand, contend that the complaint fails to state a cause of action because the decision to declare a dividend is a matter within the discretion of the Board of Directors and that this decision cannot be judicially interfered with in the absence of a showing of oppressive or fraudulent abuse of discretion. Defendants assert that plaintiff has failed to allege such an abuse of discretion and therefore the complaint must be dismissed.

Moreover, defendants contend that Liggett's decision not to declare a dividend was in essence a routine business decision insulated by the business judgment rule. According to the defendants, the complaint fails to make such allegations as would preclude the business judgment rule applying and thus permit a judicial review of the transaction.

## IV

■ A decision to declare a dividend is a matter ordinarily addressed to the discretion of the Board of Directors invoking, as it does, important business considerations. Prior Delaware cases have permitted directors wide latitude in making this decision and the declaring of a dividend is considered a routine matter which enjoys a presumption of sound business judgment which will not be disturbed by a court in the absence of a disabling factor. *Eshleman v. Keenan*, Del.Ch., 194 A. 40 (1937); *aff'd.*, 2 A.2d 904 (1938). *Moskowitz v. Bantrell*, Del.Supr. 190 A.2d 749 (1963); and *Baron v. Allied Artists Pictures Corp.*, Del. Ch., 337 A.2d 653 (1975).

The decision to declare a dividend is also within the ambit of the statutory powers of the directors. 8 *Del.C.* § 170(a) states:

"(a) The directors of every corporation, subject to any restrictions contained in its certificate of incorporation, may declare and pay dividends upon the shares of its capital stock either (1) out of its surplus, as defined in and computed in accordance with §§ 154, 242 and 244 of this title, or (2) in case there shall be no such surplus, out of its net profits for the fiscal year in which the dividend is declared and/or the preceding fiscal year. If the capital of the corporation, computed in accordance with §§ 154, 242 and 244 of this title, shall have been diminished by depreciation in the value of its property, or by losses, or otherwise, to an amount less than the aggregate amount of the capital represented by the issued and outstanding stock of all classes having a preference upon the distribution of assets, the directors of such corporation shall not declare and pay out of such net profits any dividends upon any shares of any classes of its capital stock until the deficiency in the amount of capital represented by the issued and outstanding stock of all classes having a preference upon the distribution of assets shall have been repaired."

It is assumed for present purposes that Liggett possesses a sufficient capital surplus from which to declare a dividend. Plaintiff, therefore, must allege facts which, if true, would overcome the protection of the business judgment rule so that the transaction might be tested against the intrinsic fairness test which shifts the burden of persuasion to the defendant to show the intrinsic fairness of the entire transaction. *Schreiber v. Pennzoil Co.*, Del.Ch., 419 A.2d 952 (1980).

## V

The threshold inquiry, therefore, is whether there are allegations in the complaint which, if true, would permit the transaction to be tested against the intrinsic fairness test.

■ As previously noted, the complaint alleged that Grand Met—through its wholly-owned subsidiary—acquired approximately 85% of the issued and outstanding common stock of Liggett. Grand Met was therefore the majority shareholder or parent corporation at the time of the disputed transaction. The law is settled in this State that such status carries with it a fiduciary duty with respect to the minority shareholders of the subsidiary corporation. *Getty Oil Co. v. Skelly Oil Co.*, Del.Supr., 267 A.2d 883 (1970). The mere existence of this

relationship, however, does not by itself invoke the intrinsic fairness test. The fiduciary relationship must be accompanied by a showing of self-dealing or some other disabling factor before the stricter test is warranted. Thus, within the context of parent-subsidiary dealings there must be a showing that as a result of its control and domination the parent caused the subsidiary to act in such a way that the parent usurped something of value to the exclusion of, and detriment to, the minority shareholders of the subsidiary. *Sinclair Oil Corp. v. Levien*, Del.Supr., 280 A.2d 717 (1971).

There is no question that the allegations in the complaint are sufficient to support the first prerequisite for the invocation of the intrinsic fairness test: control and domination of the transaction by the parent corporation. The defendants, however, claim that the allegations in the complaint are insufficient to state a claim of self-dealing because there is no allegation that an affirmative act was taken by Liggett and because the allegations do not state that Grand Met received anything to the exclusion of, and detriment to, the plaintiff.

## VI

■ The defendants' argument that the intrinsic fairness test is not applicable because Grand Met did not cause Liggett to act is based on the earlier cited general principle that a director's decision to declare a dividend is a discretionary determination usually deferred to by the courts. However, this principle does not stand for the proposition that director inaction is never judicially reviewable. In the arena of corporation decision making, a decision not to act is as much a decision as an affirmative decision to enter into a specific transaction. The decision not to declare a dividend is a business decision which should not be motivated by self-interest. Thus, if as alleged, Grand Met—through its dominant position—caused Liggett not to declare a dividend solely for Grand Met's pecuniary gain, then the transaction would not be shielded by the business judgment rule but rather should be tested for intrinsic fairness.

## VII

Defendants' next argument is that the intrinsic fairness test is not applicable because Grand Met could not have received anything of value to the exclusion of the plaintiff. The absence of this element was dispositive after trial in *Sinclair Oil Corp. v. Levien*, supra. There, the Court held that despite the existence of control, the payment of dividends by an almost wholly-owned subsidiary was within the directors' business judgment even though the dividends primarily benefited the parent corporation. The basis for the Court's holding was that inasmuch as dividends are declared prorata, the parent does not benefit any more than the minority stockholders of · the subsidiary on a share-for-share basis.

Consequently, in order to invoke the intrinsic fairness test, the plaintiff must at ·least allege the presence of self-dealing— that is, that Grand Met usurped something of value to the exclusion of the minority stockholders. Plaintiff attempts to show that this essential element is covered by the allegations in the complaint by claiming that the present transaction must be viewed in its entirety. In other words, plaintiff claims that the failure to declare a dividend and the decision to effect a cash out merger must be considered as one transaction. Thus it is claimed the merger, in effect, was the mechanism through which the defendants benefitted at the expense of the minority stockholders. Otherwise, the rationale of *Sinclair* would apply since a decision not to declare a dividend would also impact equally on all the stockholders on a share-for-share basis.

In order for the plaintiff to state a cause of action, therefore, it must allege the existence of two mutually dependent factors. The first is the plaintiff's right to the dividend in question. If such a cognizable right or entitlement exists, however, plaintiff must also necessarily claim, if a cause of action is to be stated, that the impending merger and the consideration being offered did not account for the value of the dividend which would have been forthcoming if the merger had not taken place.

■ As to the first factor, it is settled law in Delaware that the Court of Chancery will not compel payment of a dividend unless the corporation is in the proper business and financial posture to do so, and if the failure to declare the dividend is the result of an "oppressive or fraudulent abuse of discretion." *Eshleman v. Keenan*, supra; *Moskowitz v. Bantrell*, supra; and *Baron v. Allied Artists Pictures Corp.*, supra. This standard has also been stated in terms of "oppression or bad faith." FOLK, *The Delaware General Corporation Law*, Little, Brown (1972) § 170 p. 188.

Because plaintiff's complaint fails to plead with particularity any fraudulent conduct as required by Chancery Rule 9(b), the plaintiff cannot claim a fraudulent abuse of discretion.

■ It would appear, however, that plaintiff has stated a legally cognizable right to the dividend based on oppression or bad faith subject, however, to a contingency. Thus, assuming as this Court must, the correctness of the allegations of the complaint, a decision motivated by self-interest to forego a regular dividend immediately prior to a cash out merger might well be oppressive or done in bad faith if the terms of the merger were unfair. The unfairness of the merger is a necessary prerequisite because if the merger price included the value of the dividend which was foregone because of an improper motive, then the plaintiff has suffered no loss nor has the defendant received any benefit.

It follows, therefore, that plaintiff's legal theory and thus its cause of action are inexorably tied to the question of whether the merger price was fair and therefore accounted for the value of the otherwise forthcoming dividend. This points up the fallacy of the complaint. Because plaintiff has never challenged the merger, the complaint does not presently state a claim upon which relief can be granted. This Court cannot assume that the terms of the merger were unfair when the complaint does not even challenge the merger or attack the merger price.

■ Although the timing of the merger and the constituent corporation's dividend policy may reflect on the fairness of the merger terms, there is no mechanical or formulistic rule that they must. As provided in *Sterling v. Mayflower Hotel Corp.*, Del.Supr., 93 A.2d 107, 115 (1952), ". . . the requirement that consideration be given to all relevant factors entering into the determination of value does not mean that any one factor is in every case important or that it must be given a definite weight in the evaluation." See also *Weinberger v. UOP, Inc.*, Del.Ch., 426 A.2d 1333, 1356 (1981). The merger itself must necessarily be challenged in order to determine the relevant factors which bear on value and thus fairness. In the present case the only proper inference which can be drawn from the allegations in the complaint concerning the merger price was that it was the same as an earlier tender offer which was apparently inflated as a result of a competing offer. This is not a sufficient allegation to state a cause of action which challenges the fairness of a merger because it does not necessarily follow that the merger price is unfair just because it is the same price as the tender offer price. The tender offer price may have been artificially inflated due to spirited bidding and thus the merger price may have been fair even though it included a value for the passed dividend and even if it was the same as the tender offer price.

■ A court must always be cautious, however, in dismissing an action for the failure to state a claim upon which relief can be granted and all inferences must be resolved in favor of the nonmoving party— especially at a preliminary stage. *Michelson v. Duncan*, Del.Supr., 407 A.2d 211 (1979). Even our liberal rules of pleading, however, require a plaintiff to adopt a theory of the case upon which he can prevail.

Here the plaintiff has thus far chosen to avoid directly attacking the merger—perhaps because it has accepted the benefits of the merger and thus fears a challenge to its standing to maintain a suit. See: *Trounstine v. Remington Rand, Inc.*, Del.Ch., 194 A. 95 (1937); *Frank v. Wilson & Co., Inc.*, Del.Supr., 32 A.2d 277 (1943).

Be that as it may, the refusal of the plaintiff to directly attack the merger is fatal because plaintiff has not alleged any basis from which an inference of oppression or bad faith or an inference of breach of fiduciary duty due to self-dealing can be drawn. As a result, there is no present basis upon which to predicate a judicial review of the transaction under the intrinsic fairness test.

Defendants' motion to dismiss for failure to state a claim upon which relief can be granted is therefore granted. Because plaintiff, however, has alleged facts which, if true, would state a claim upon which relief could be granted if the merger can be challenged, plaintiff is given 20 days in which to decide if it desires to seek to amend its complaint so as to supply the missing essential allegation. IT IS SO ORDERED.