**GABELLI & CO., INC., Profit Sharing Plan, Plaintiff Below, Appellant,**

v.

**LIGGETT GROUP INC., Grand Metropolitan Limited, and GM Sub Corporation, Defendants Below, Appellees.**

Supreme Court of Delaware.

Submitted: Sept. 19, 1983.

Decided: May 29, 1984.

York City, of counsel, for plaintiff below, appellant.

R. Franklin Balotti and Jesse A. Finkelstein of Richards, Layton & Finger, Wilmington, John L. Warden and Gandolfo V. DiBlasi (argued), of Sullivan & Cromwell, New York City, of counsel, for defendants below, appellees.

Before HERRMANN, C.J., MOORE and CHRISTIE, JJ.

HERRMANN, Chief Justice:

This appeal from the Court of Chancery involves a class action brought by a minority stockholder to compel the payment of a dividend on the theory that the majority stockholder breached its fiduciary duty to the minority stockholders by causing the corporation to refrain from declaring the dividend solely for the purpose of enabling the majority stockholder to obtain the dividend funds for itself after a merger of the corporation with a wholly-owned subsidiary of the majority stockholder and a cash-out of the minority stockholders. The Court of Chancery granted summary judgment in favor of the defendants. We affirm.

I.

The following facts are undisputed:

In April 1980, the defendant GM Sub Corporation ("GM Sub"), a wholly-owned subsidiary of defendant Grand Metropolitan Limited ("Grand Met") formed to acquire the defendant Liggett Group, Inc. ("Liggett"), commenced a tender offer for "any and all" of Liggett's approximately 8.4 million common shares at the price of $50 per share. In the first quarter of 1980, Liggett common stock traded on the New York Stock Exchange in the range of $34⅛ to $41¾ per share.

The Liggett Board of Directors resisted GM Sub's tender offer and recommended to its shareholders that the offer be rejected as inadequate.

Victor F. Battaglia and Samuel R. Russell of Biggs & Battaglia, Wilmington, Ronald Litowitz (argued), and Jeffrey A. Klafter of Bernstein, Litowitz, Berger & Grossmann, New York City, David Perlmutter of Karpatkin, Pollet, Perlmutter & Bell, New

On May 12,*, Standard Brands Incorporated ("Standard Brands") commenced a rival tender offer for up to 4,000,000 shares of Liggett's common stock at $65 per share. The Standard Brands offer was endorsed by the Board of Directors of Liggett as being fair. On May 14, GM Sub amended the terms of its tender offer to increase the price to $69 per share. On the same day, shortly after GM Sub announced its increased offer, Standard Brands publicly announced the withdrawal of its offer. On May 15, Liggett's Board of Directors resolved to approve GM Sub's amended offer of $69 and to recommend that it be accepted by Liggett's shareholders as a fair price.

The Offer to Purchase sent to Liggett stockholders in connection with the tender offer stated that Grand Met and GM Sub intended "as promptly as possible [after the conclusion of the tender offer] to seek to have [Liggett] consummate a merger with [GM Sub] or an affiliate of [GM Sub]." Further, it was stated in the Offer that GM Sub intended to pay the tender offer price of $69 per share in connection with the merger cash-out of shares not tendered.

As a result of the tender offer, GM Sub acquired 87.4% of Liggett's outstanding common stock. The plaintiff Gabelli & Co., Inc. Profit Sharing Plan ("Gabelli") did not tender its 800 shares in response to the offer.

Immediately following consummation of the tender offer, preparations for the merger were commenced. During the month of June 1980, an Agreement and Plan of Merger (the "Merger Agreement") and a preliminary Information Statement, as required by the Securities and Exchange Commission, were prepared and submitted to the Liggett Board of Directors for approval. On June 30, the Liggett Board approved the Merger Agreement.

Upon the approval of the Merger Agreement, preliminary copies of the Information Statement were filed with the SEC pursuant to its Rule that this be done at least 10 days prior to mailing the final Statement to the shareholders. After receiving the comments of the SEC on July 15, the finalized Information Statement was duly prepared and sent to Liggett shareholders on July 18.

The stockholders' meeting approving the merger was held 20 days later on August 7, and the merger became effective on that date. The minority shareholders who were merged out in August received the same $69 per share price paid to the shareholders who tendered their shares in June. Gabelli surrendered its shares in the merger cash-out and accepted the $69 price. Neither Gabelli nor any other shareholder attempted to block the merger. The only stock appraisal proceeding arising from the merger was voluntarily dismissed.

Historically, Liggett had paid quarterly dividends to its common shareholders in an amount of $.625 per share in March, June, September and December of each year. On June 2, 1980, prior to the consummation of the merger and during the pendency of the tender offer, a quarterly dividend of $.625 per share was paid to the holders of Liggett common stock as of a record date of May 15, 1980. The dividend at issue in this case is a third-quarter dividend, which in prior years had been declared in late July, with a mid-August record date and payment in September. No such dividend was declared or paid to Liggett stockholders for the third quarter of 1980. The merger transaction involved approximately 300 million dollars; the dividends claimed on behalf of the minority stockholders involved approximately $677,000.

## II.

By its original complaint filed prior to the consummation of the merger, Gabelli brought this action to compel Liggett's entitlement to a third-quarter dividend.

---

* The sequence of dates is set forth in detail in order to relate them to the plaintiff's claim of

Board to declare a third-quarterly dividend for 1980. Gabelli there alleged that "Grand Met, by reason of its majority and controlling position in Liggett, owes a fiduciary duty to Liggett's minority shareholders," and that "Grand Met is breaching its fiduciary duty to Liggett's minority shareholders by causing Liggett to eliminate its regular dividend to enable Grand Met to obtain the Liggett dividend money for itself upon the merger of Liggett and Grand Met." The prayer of the complaint was for judgment "[R]equiring that Liggett pay the omitted quarterly dividend of $.625 per share." The complaint did not seek to enjoin the consummation of the merger or attack the fairness of the price offered.

The Court of Chancery granted the defendants' motion to dismiss the complaint with leave to amend [*Gabelli & Co., Inc. Profit Sharing Plan v. Liggett Group, Inc., et al.*, Del.Ch., 444 A.2d 261 (1982)], on the ground that the complaint failed to state a claim upon which relief could be granted, stating:

"In order for the plaintiff to state a cause of action, therefore, it must allege the existence of two mutually dependent factors. The first is the plaintiff's right to the dividend in question. If such a cognizable right or entitlement exists, however, plaintiff must also necessarily claim, if a cause of action is to be stated, that the impending merger and the consideration being offered did not account for the value of the dividend which would have been forthcoming if the merger had not taken place." (444 A.2d at 265.)

The Trial Court further held that in order to show that it was entitled to the dividend in question, Gabelli was obliged to plead and prove that the dividend was withheld as a result of an oppressive abuse of discretion in the context of an unfair merger. *Id.* at 266.

In April 1982, Gabelli amended its complaint to allege that Grand Met breached its fiduciary duty to Liggett's minority shareholders at the time of the merger "... by setting the merger at $69 to be in parity with the tender, but without consideration for the dividend which was being omitted." Otherwise, the amended complaint was substantially the same as the original complaint. Again, the prayer of the amended complaint was for judgment requiring Liggett to pay a 1980 third-quarterly dividend of $.625 per share.

The defendants moved for summary judgment, supported by an affidavit addressed primarily to the fairness of the merger price. Gabelli took no discovery; it rested its position solely upon the allegations of its complaint.

In granting summary judgment in favor of the defendants, the Trial Court stated that Gabelli's position, based as it was solely on its unsupported complaint, was "merely a restatement of its position" on the motion to dismiss the complaint and was without merit for the reasons stated in the Court's prior opinion. Gabelli appeals.

### III.

In our view, this case commenced as, and continues to be, no more nor less than an action to compel the declaration and payment of a dividend by the Board of Directors of Liggett for the benefit of about 13% of its stockholders who were then in the final stages of being cashed-out in a merger transaction for a price conceded to be fair for the acquisition of all of the assets of Liggett.

As so simplified, it is abundantly clear upon the undisputed facts that summary judgment for the defendants was correctly granted.

■ There is no showing by the plaintiff anywhere in this case that, given the extraordinary circumstances existing in Liggett's affairs in late July 1980, the Board of Liggett abused its discretion in the exercise of its business judgment by not declaring a third-quarter dividend in accord with the corporation's dividend history of prior years. In the absence of such showing, the plaintiff may not prevail in this action to compel the dividend.

It is settled law in this State that the declaration and payment of a dividend rests in the discretion of the corporation's board of directors in the exercise of its business judgment; that, before the courts will interfere with the judgment of the board of directors in such matter, fraud or gross abuse of discretion must be shown, *Moskowitz v. Bantrell,* Del.Supr., 190 A.2d 749 (1963). There, this Court quoted with approval the time-honored statement of Chancellor Wolcott in *Eshleman v. Keenan,* Del.Ch., 194 A. 40, 43 (1937) that courts act to compel the declaration of a dividend only upon a demonstration "that the withholding of it is explicable only on the theory of an oppressive or fraudulent abuse of discretion." See also *Baron v. Allied Artists Pictures Corp.,* Del.Ch., 337 A.2d 653, 659 (1975).

Gabelli has not alleged fraud; and it has made no showing that the failure of Liggett's Board to declare a third-quarter dividend, under the undisputed facts and circumstances of this case, is explicable only on the theory of a gross or oppressive abuse of discretion. As has been noted, Gabelli took no discovery in this case. It made no effort by interrogatory, affidavit, deposition, or otherwise, to raise any genuine issue of material fact as to whether, in the final stages of the cash-out merger, the Liggett Board abused its discretion in electing not to declare a final dividend in addition to the cash-out merger price which the Board itself had approved and recommended as fair. On the other hand, in support of their motion for summary judgment, the defendants presented the affidavit of the Secretary of Liggett containing explanation and justification for the merger time-table which resulted in the non-payment of the dividend. Gabelli produced no affidavit or other evidence in response.

On the record before us, the non-payment of a final dividend by the Liggett Board in the final stages of the cash-out merger, is reasonably "explicable" (in the language of *Eshleman*) for at least 2 reasons: (1) It would have been unfair to the holders of 87% of the stock, who accepted the tender offer upon the recommendation of the Board, to reward by a "farewell" or "bonus" dividend the holders of the remaining 13% who, for some unannounced reason, declined to accept the tender-offer and held out for the merger cash-out with the risk-free assurance of receiving the same price per share; and (2) It would have been unreasonable to supplement the $69 per share, which had been approved by the Board as a fair price for Liggett and all of its assets, by a last minute dividend declared in the final stages of the merger cash-out process.

Gabelli has summarized the crux of its case as follows:

"Simply put, plaintiff does not urge that the Liggett board of directors was necessarily required to pay the July 1980 dividend. Instead, plaintiff claims that Grand Met, for its own gain, wrongfully prevented Liggett from declaring a dividend it would otherwise have declared."

The plaintiff has placed nothing on this record to raise a genuine issue of material fact as to whether (1) Grand Met ** actually "prevented" the Liggett Board from declaring the dividend; or (2) the Liggett Board actually would have "otherwise" declared the dividend. The undisputed facts before us, and the reasonable inferences to be drawn therefrom, are to the contrary.

## IV.

Gabelli has attempted to avoid the force and effect of the law governing the declaration of dividends, and to overcome its failure to show any material issue of fact suggesting an abuse of discretion by the Liggett Board, by the claim that Grand Met, in its position as dominant majority stockholder, engaged in self-dealing such as to require that its conduct be subjected to the "intrinsic fairness" test discussed by

** For convenience in this connection, we follow the plaintiff's naming of Grand Met rather than its subsidiary GM Sub as the majority stockholder.

this Court in *Sinclair Oil Corp. v. Levien,* Del.Supr., 280 A.2d 717 (1971).

The plaintiff rests its entire case upon the statement in *Sinclair* (280 A.2d at 720) that self-dealing

"... occurs when the parent, by virtue of its domination of the subsidiary, causes the subsidiary to act in such a way that the parent receives something from the subsidiary to the exclusion of, and detriment to, the minority stockholders of the subsidiary."

Upon that basis, Gabelli builds the contention that the conduct of the defendants is not to be tested by the business judgment rule under which a court will not interfere with the judgment of a board of directors unless there is a showing of gross and palpable overreaching, and as to which the plaintiff has the burden of proof; that, by reason of the applicability of the intrinsic fairness test, the burden of proof shifts in this case to the defendants to prove, subject to judicial scrutiny, that the conduct under attack was objectively fair. See *Sinclair,* 280 A.2d at 719–720. Gabelli's position is manifestly untenable.

In support of its position, and in an effort to show its "detriment" under the *Sinclair* language, Gabelli argues that Grand Met "usurped the minority's share of the dividend"; that it "retained the minority's share" of the dividend funds; that it "misappropriated the Liggett dividend for itself." All such contentions are based upon the assumption that, under the law and the facts of this case, Gabelli had a right or entitlement to a third-quarter dividend which Grand Met "usurped," "retained," or "misappropriated."

■ The record does not justify any such assumption for the following reasons: (1) Gabelli had no right or entitlement to a third-quarter dividend in the absence of a declaration thereof, especially under the extraordinary circumstances of this case; (2) Gabelli was not prevented from tendering its shares and receiving full payment therefor promptly, the tender offer being for "any and all" shares; (3) Gabelli had no valid reason in July to expect extra compensation for its stock, by dividend or otherwise, over and above that paid to the great majority of its fellow stockholders in June; (4) The merger price of $69 per share, conceded here to have been a fair price for all assets of Liggett including cash on hand, fully compensated Gabelli for its shares, including any right to receive any additional dividends.

In view of the foregoing undisputed facts and law, Gabelli has demonstrated no such "self-dealing" or "detriment" as to warrant the application of the *Sinclair* intrinsic fairness test upon which Gabelli has based its entire case.

The foregoing makes manifest the ineffectiveness of Gabelli's amendment to its complaint to allege that the $69 merger price was established "without consideration for the dividend which was being omitted." This allegation also presupposes that Gabelli had some right or entitlement to an undeclared third-quarter dividend which the defendants took from it wrongfully and to its "detriment." For the reasons stated, the fallacy of the assumption is clear. The amendment to the complaint was of no assistance to Gabelli in its effort to invoke the intrinsic fairness test.

\* \* \* \* \* \*

We conclude that there is no error in the Trial Court's grant of summary judgment in favor of the defendants.

AFFIRMED.