**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

MORGAN T. ZURN
VICE CHANCELLOR

LEONARD L. WILLIAMS JUSTICE CENTER
500 N. KING STREET, SUITE 11400
WILMINGTON, DELAWARE 19801-3734

November 20, 2024

Theodore A. Kittila, Esquire
Halloran Farkas + Kittila LLP
5722 Kennett Pike, Suite C/D
Wilmington, DE  19807

Jesse L. Noa, Esquire
Potter Anderson & Corroon LLP
1313 North Market Street, 6th Floor
Wilmington, DE  19801

RE: ***Kevin Robnett v. Lithos Industries Inc.,***
Civil Action No. 2024-0232-MTZ

Dear Counsel:

I write to address the motion for summary judgment filed by defendant Lithos Industries, Inc. ("Lithos" or the "Company").  As the undisputed facts show Lithos terminated plaintiff Kevin Robnett at will and repurchased his shares in accordance with the express and implied terms of the contract between them, Lithos's motion is granted.

## I.     BACKGROUND

Lithos conducted a preferred stock financing round that initially closed on February 14, 2023.[1]  The same day, Lithos and Robnett, one of Lithos's co-CEOs,

---

[1] Docket Item ("D.I.") 1 [hereinafter "Compl."] ¶¶ 10–11; D.I. 27 [hereinafter "Ans. Br. App."] at A-27.

entered into a Common Stock Repurchase Agreement (the "Agreement").[2]  The

financing's closing was conditioned on Robnett signing the Agreement.[3]

The Agreement created an at-will employment relationship, providing that

"[n]othing in this Agreement shall create an obligation on the Company or [Robnett]

to continue [Robnett's] Service to the Company.  [Robnett's] Service shall remain

terminable at will."[4]  The Agreement also authorized Lithos to terminate Robnett's

employment for cause under specified circumstances, including if Robnett "willfully

fail[ed] to substantially perform his material duties" and did not cure such failure

within thirty days of written notice.[5]

Robnett beneficially owned 5,000,000 shares of Lithos common stock.  The

Agreement deemed 3,250,000 of Robnett's shares as unvested (the "Vesting

Shares"), and established they would vest in twenty-four equal monthly installments

beginning March 14, 2023.[6]  The Agreement allowed Lithos to repurchase Vesting

Shares at $0.00001 per share upon Robnett's termination, in different quantities

---

[2] Compl. Ex. A [hereinafter "Agr."].

[3] *Id.* Recital B.

[4] *Id.* ¶ 6(b).

[5] *Id.* ¶¶ 1(b), 2(b).

[6] *Id.* Recital A, ¶¶ 2(a), 2(c).

depending on if the termination was for cause or at will.[7]  If Lithos terminated Robnett at will, it could repurchase only those Vesting Shares that had not vested according to the schedule.  If Lithos fired Robnett for cause before the final vesting installment, all Vesting Shares would be deemed unvested, so Lithos could repurchase all 3,250,000 of them.[8]  The Agreement did not allow for the repurchase of the remaining 1,750,000 shares under any circumstances (the "Guaranteed Shares").  And if Robnett resigned for "Good Reason" as defined in the Agreement,[9] all his Vesting Shares would vest, so Lithos could not repurchase any shares.[10]

Robnett alleges that once Lithos secured the ability to cheaply eliminate his equity stake, it moved swiftly to terminate his employment.[11]  He alleges Lithos embarked down a path of termination for cause, intending to repurchase all 3,250,000 Vesting Shares and leave him with only the Guaranteed Shares and $32.50.  But, Robnett presses, when Lithos realized it had no legal grounds to

---

[7] *Id.* ¶ 2(b).

[8] *Id.*

[9] *Id.* ¶ 1(e) (defining "Good Reason" to include a nonconsensual "material reduction in [Robnett's] overall compensation and benefits" or a nonconsensual "material diminution in [Robnett's] overall responsibilities").

[10] *Id.* ¶ 2(e).

[11] Compl. ¶¶ 19, 31.

effectuate a termination for cause, it decided to terminate him at will, repurchasing 2,708,333 Vesting Shares for $27.08.[12]

Lithos's board, which included Robnett, met on June 2, 2023.[13] Robnett had circulated an agenda ahead of the meeting. But when the meeting started, another director took the floor to address "additional agenda items" not provided to Robnett in advance.[14] The director moved for the board to deliver Robnett a memo detailing the Company's grounds for termination for cause. Another director explained the thirty-day cure period.[15] The same day, Lithos emailed Robnett a letter repeating the information in the memo. The letter reminded Robnett he was "an at-will employee" and could be terminated "at any time with or without cause or prior notice."[16]

Robnett offered to resign three days later under certain terms, but noted he believed his termination was "wrongful and not for any cause."[17] The board rejected

---

[12] *Id.* ¶ 56; *see also* D.I. 26 [hereinafter "Ans. Br."] at 30. Four vesting periods had passed when Lithos terminated Robnett. So 541,667 Vesting Shares had vested, while 2,708,333 were unvested and thus subject to repurchase upon a termination at will.

[13] Compl. ¶¶ 14–15.

[14] *Id.* ¶ 16.

[15] D.I. 6 Answer ¶ 18.

[16] D.I. 22 Ex. B.

[17] Ans. Br. App. at A-152.

Robnett's offer via letter on June 19, restating its grounds for termination for cause and reiterating that Robnett was an at-will employee.[18] The June 19 letter also stated Lithos was willing to agree Robnett could retain 1,750,000 shares if Lithos could exercise its "repurchase rights . . . as to the balance of [his] shares."[19]

On June 23, 2023—nine days before the for-cause cure period was set to expire[20]—the board removed Robnett by unanimous written consent.[21] At 10:08 a.m. that day, Lithos emailed Robnett a letter notifying him of his termination.[22] More than an hour later, Robnett emailed Lithos his own letter claiming he had "Good Reason" to resign.[23] The board issued a release to stockholders noting Robnett had been an at-will employee.[24]

---

[18] D.I. 22 Ex. C.

[19] *Id.*

[20] Because Lithos gave Robnett notice that it had cause to terminate his employment on June 2, the thirty-day cure period would have expired on July 2.

[21] D.I. 22 Ex. H.

[22] D.I. 22 Ex. F.

[23] D.I. 22 Ex. G (email timestamped 11:29 a.m.); Ans. Br. App. at 174–80. Robnett's letter stated that the board required him to use a company laptop that was "being surveilled without [his] consent," monitored his email and internet usage, and shielded him from large portions of Lithos's business despite his ongoing role as co-CEO. D.I. 22 Ex. G; *see also* Ans. Br. at 9, 12, 29.

[24] D.I. 22 Ex. I.

On July 12, Lithos informed Robnett it was repurchasing "all 2,708,333 shares of [his] Unvested" shares, consistent with an at-will termination.[25] Lithos paid him $27.08.[26]

Robnett filed his complaint on March 10, 2024, claiming Lithos purported to terminate him for cause, and repurchased all available shares, when there was no cause to terminate him. His complaint presents Count I for breach of the Agreement; Count II for breach of the implied covenant of good faith and fair dealing; and Count III for an injunction returning the repurchased shares.[27] Lithos filed a counterclaim, asserting a cause of action for declaratory judgment.[28] On July 8, Lithos moved for summary judgment on all counts.[29] The parties briefed Lithos's motion, and I took it under advisement on the papers on November 4.[30]

## II.    ANALYSIS

This Court will grant a motion for summary judgment where there are no genuine issues of material fact, and the moving party is entitled to judgment as a

---

[25] D.I. 22 Ex J.

[26] D.I. 22 Ex. K.

[27] Compl. ¶¶ 35–66.

[28] D.I. 6.

[29] D.I. 22. at Mot.

[30] D.I. 22; Ans. Br.; D.I. 31; D.I. 35.

matter of law.[31]  The movant has the burden of showing entitlement to judgment as a matter of law; then the nonmovant has the burden of demonstrating a genuine issue of material fact precludes judgment for the movant.[32]  "Summary judgment must be granted when the nonmovant fails to respond to facts which the movant has placed in the record which entitle him to summary judgment."[33]  The Court views the facts in the light most favorable to the nonmoving party.[34]

To succeed on a breach of contract claim, the plaintiff must show the existence of a contract, a breach of the contract's obligations, and resulting damages.[35]  The parties do not dispute that the Agreement is a valid contract.  They disagree on the nature of Robnett's termination, and whether Lithos complied with the Agreement in terminating him.

Lithos prevails because the undisputed facts show it terminated Robnett at will and repurchased only those unvested shares it was entitled to repurchase for an

---

[31] Ct. Ch. R. 56(c).

[32] *Deloitte LLP v. Flanagan*, 2009 WL 5200657, at *3 (Del. Ch. Dec. 29, 2009).

[33] *Gabelli & Co., Inc. v. Liggett Gp., Inc.*, 1983 WL 18015, at *4 (Del. Ch. Mar. 2, 1983), *aff'd*, 479 A.2d 276 (Del. 1984).

[34] *Weil v. VEREIT Operating P'ship, L.P.*, 2018 WL 834428, at *3 (Del. Ch. Feb. 13, 2018).

[35] *E.g.*, *Wenske v. Blue Bell Creameries, Inc.*, 2018 WL 3337531, at *9 (Del. Ch. July 6, 2018).

at-will termination. Lithos did not terminate Robnett for cause. Lithos's at-will termination did not breach any express or implied terms in the Agreement.

### A. There Is No Genuine Dispute That Robnett Was Fired At Will.

Lithos moved for summary judgment on the premise that because it terminated Robnett at will, it cannot have breached the Agreement's provisions for termination for cause. Over the course of briefing, Robnett conceded Lithos repurchased only 2,708,333 Vesting Shares, consistent with an at-will termination.[36] Lithos did not repurchase 3,250,000 Vesting Shares, as it could upon a termination for cause.

It is also undisputed that Lithos never stated that it terminated Robnett for cause. And Lithos regularly reiterated that Robnett was an at-will employee in its communications beginning June 2.[37] Lithos has established it terminated Robnett at will.

---

[36] *See* Ans. Br. at 30 ("Robnett concedes that Lithos did not repurchase all 3,250,000 shares of his stock subject to the Repurchase Agreement as alleged in the Complaint. The allegations in paragraph 46 and 48 of the Complaint referencing that number of shares repurchased are withdrawn.").

[37] D.I. 22 Ex. B ("Setting aside the concept of 'Cause' . . . your employment as co-CEO for the Company is at-will, meaning . . . the Company may terminate your employment at any time with or without cause or prior notice."); D.I. 22 Ex. C ("[Y]ou are an at-will employee and can be terminated at any time with or without notice under applicable law."); D.I. 22 Ex. I ("Robnett was employed on an at-will basis, meaning . . . the Company . . .

Robnett maintains Lithos purported to terminate him for cause, and did so before the cure period ended.[38] But Robnett has identified no supporting evidence, as he must.[39] He points to evidence Lithos believed it could fire him for cause, and evidence Lithos may have intended to fire him for cause for a time before they fired him at will.[40] While Lithos did not state Robnett was terminated at will until the July 12 letter, it never said before July 12 that he was terminated for cause. Lithos's June 19 letter indicated Lithos's intent to exercise its repurchase rights as to the Vesting Shares. Its June 23 letter did not explicitly state he was fired at will or how

could terminate the employment relationship for any reason and at any time, with or without notice.").

[38] Ans. Br. at 29–31.

[39] *Cirba Inc. v. Turbonomic, Inc.*, 2022 WL 985417, at *3 (Del. Ch. Apr. 1, 2022) ("If the movant puts in the record facts which, if undenied, entitle him to summary judgment, the burden shifts to the defending party to dispute the facts by affidavit or proof of similar weight." (quoting *Comet Sys., Inc. S'holders' Agent v. MIVA, Inc.*, 980 A.2d 1024, 1029 (Del. Ch. 2008))).

[40] *See* D.I. 22 Ex. B ("Based on the above referenced performance and misconduct issues, the Company hereby places you on notice that it has 'Cause,' as defined in the Repurchase Agreement, to terminate your performance. While the Repurchase Agreement extends you a 30-day notice-and-cure period, your prior misrepresentations . . . and your inability to successfully perform your key duties . . . are uncurable."); D.I. 6, Answer ¶ 18 ("Lithos admits that Gregg took the floor and identified that there is a 30-day cure period."); D.I. 22 Ex. C (reaffirming cause and stating the Company "desire[s] to reach an amicable resolution" in which "the Company will agree to allow you to retain 1,750,000 of your shares of common stock of the Company, but will be exercising its repurchase rights under the Repurchase Agreement as to the balance of your shares.").

much stock Lithos considered unvested.  The June 23 board consent only expressed Lithos's belief that it had cause to remove him.  Robnett points to no evidence creating any issue of fact as to whether Lithos fired him at will.[41]

### B.      Lithos Did Not Breach The Agreement.

Robnett argues that even if Lithos terminated him at will, Lithos breached the Agreement by doing so before the cure period for termination for cause expired.[42] As any thirty-day cure period began on June 2 when Lithos notified Robnett of his termination, Robnett's June 23 firing was within the cure period.  Lithos contends it is still entitled to judgment because the Agreement does not condition termination at will on the cure period for termination for cause.[43]  This issue is one of contract interpretation, a legal issue well-suited for summary judgment as it can be performed even in the context of disputed facts.

The Agreement is plain:  "Nothing in this Agreement shall create an obligation on the Company . . . to continue [Robnett's] Service to the Company.  [Robnett's] Service shall remain terminable at will."[44]  This language makes clear that nothing—

---

[41] I therefore need not address Robnett's argument that Lithos cannot establish cause.

[42] Ans. Br. at 30–32.

[43] D.I. 22 at 14; *see also* D.I. 31 at 4, 16.

[44] Agr. ¶ 6(b).

not even the cure period for termination for cause—interrupts or conditions Lithos's ability to terminate Robnett at will.[45] Lithos contracted for the right to terminate Robnett's at-will employment at any time.

Robnett argues this interpretation cannot be correct because it would render the cure period "a nullity."[46] Not so: the cure period conditions termination for cause, and therefore the repurchase of all Robnett's Vesting Shares.

Lithos had the contractual freedom to terminate Robnett at will at any time, including after initiating but before completing the cure period for termination for cause. Lithos is entitled to summary judgment on Count I.

### C. Lithos Did Not Breach The Implied Covenant Of Good Faith And Fair Dealing.

So beaten back, Robnett makes a final stand, claiming Lithos's termination at will breached the implied covenant of good faith and fair dealing that applies in

---

[45] This language differentiates termination at will from the contractual dispute mechanism in *MSCM Holdings*, which Robnett relies on in arguing "[t]he notice and cure period is analogous to a contractual dispute resolution mechanism under which a party must exhaust the agreed-upon process before filing suit." Ans. Br. at 31 (citing *MSCM Hldgs., Inc. v. PCS-Mosaic Hldgs., LLC*, 2024 WL 3595934, at *5–7 (Del. Ch. Jul. 31, 2024). The *MSCM Holdings* provision explicitly requires parties to exhaust a particular procedure before bringing suit. Here, the Agreement made clear Lithos could terminate Robnett at will without any precursory procedure.

[46] Ans. Br. at 30.

particular ways in at-will employment contracts like the Agreement.  Robnett alleges his termination was in bad faith because Lithos terminated him "only after he notified the Company that he had 'Good Reason' to resign"[47] and the Company "realized that its pretextual reasons to terminate him for 'Cause' were factually baseless and legally insufficient under the [] Agreement."[48]

"Under Delaware law, the implied covenant inheres in all contracts and exists to fill contractual gaps that neither party anticipated."[49]  But invoking the doctrine is a "cautious enterprise."[50]  The implied covenant "cannot be invoked where the contract itself expressly covers the subject at issue."[51]  "[O]ne generally cannot base a claim for breach of the implied covenant on conduct authorized by the terms of the agreement."[52]

In the at-will employment context, courts are reluctant to apply the implied covenant "out of a concern that [it] could thereby swallow the [employment-at-will]

---

[47] D.I. 8 ¶ 5.

[48] Compl. ¶ 56.

[49] *Sheehan v. AssuredPartners, Inc.*, 2020 WL 2838575, at *11 (Del. Ch. May 29, 2020) (citing *Dieckman v. Regency GP LP*, 155 A.3d 358, 367 (Del. 2017)).

[50] *Nemec v. Shrader*, 991 A.2d 1120, 1125 (Del. 2010) (citing *Dunlap v. State Farm Fire & Cas. Co.*, 878 A.2d 434, 442 (Del. 2005)).

[51] *Fisk Ventures, LLC v. Segal*, 2008 WL 1961156, at *10 (Del. Ch. May 7, 2008).

[52] *Dunlap*, 878 A.2d at 441.

[d]octrine and effectively end at-will employment."[53]  To breach the implied covenant in that setting, an employer's conduct "must constitute 'an aspect of fraud, deceit or misrepresentation.'"[54]  Delaware courts recognize four narrowly defined and exclusive categories of actionable implied covenant claims in the at-will employment context:

> (i) where the termination violated public policy; (ii) where the employer misrepresented an important fact and the employee relied "thereon either to accept a new position or remain in a present one"; (iii) where the employer used its superior bargaining power to deprive an employee of clearly identifiable compensation related to the employee's past service; and (iv) where the employer falsified or manipulated employment records to create fictitious grounds for termination.[55]

In those contexts, "[a]n employer may not in good faith knowingly allow an employee to assume that the duration of an employment contract is indefinite, when it is, in secret contemplation of the employer, of limited duration."[56]  And an

---

[53] *E.I. DuPont de Nemours & Co. v. Pressman*, 679 A.2d 436, 442 (Del. 1996); *see also Sheehan*, 2020 WL 2838575, at *11.

[54] *Merrill v. Crothall-Am., Inc.*, 606 A.2d 96, 101 (Del. 1992) (quoting *Magnan v. Anaconda Indus., Inc.*, 429 A.2d 492, 494 (Conn. Super. Ct. 1980)).

[55] *Lord v. Souder*, 748 A.2d 393, 400–01 (Del. 2000) (quoting *Pressman*, 679 A.2d at 442–44; *Lidya Hldgs. Inc. v. Eksin*, 2022 WL 854688, at *2–3, *2 n.20 (Del. Ch. Mar. 23, 2022) (recognizing the four categories' exclusivity).

[56] *Merrill*, 606 A.2d at 102.

employer may not terminate an at-will employee with cause for pretextual reasons in order to deny them the benefits of termination without cause.[57]  Lithos seeks a summary judgment on the basis that its straightforward at-will termination did not breach the implied covenant.

Robnett attempts to show a genuine issue of material fact as to three applications of the implied covenant.  He first contends Lithos misrepresented an important fact he relied on in agreeing to the Agreement's employment terms[58]:  that Lithos induced him to execute the Agreement while misrepresenting its intention "to oust [him] and divest him of his Stock at the earliest opportunity."[59]  To support his theory, Robnett cites the timing of his firing (four months after the parties executed the Agreement) and the board's "ambush" at the June 2 meeting.[60]  He points to no evidence of any misrepresentation predating the Agreement's execution.[61]  He

---

[57] *See Sheehan*, 2020 WL 2838575, at *10.

[58] *See Lord*, 748 A.2d at 400–01.

[59] Ans. Br. at 10, 26 n.2.

[60] *Id.* at 26, 26 n.2.

[61] Robnett points to the board's conduct surrounding the ambush, namely that the board declined to follow his agenda, "in particular making no effort to identify an additional director candidate—whose presence on the Board could have protected [him] from the ambush." *Id.* at 9.  This does not suggest any pre-Agreement misrepresentation.  And while Robnett cites documents showing that there was a vacant board seat, he offers no evidence

asserts "[d]iscovery is likely to show that the Company's decision to oust [him] was made by the Series Seed Preferred Stock investors in connection with the conversion of Lithos to a Delaware entity."[62]  Yet he responded to Lithos's motion for summary judgment without filing an affidavit seeking discovery under Rule 56(f).[63]  Robnett cannot support his conclusory allegations of fraudulent misrepresentations by appealing to discovery he failed to seek.

Second, Robnett invokes the implied covenant's restraint on an employer falsifying or manipulating employment records to create fictitious grounds for termination.[64]  Robnett contends it is inferable that Lithos created fictitious grounds for terminating him, as the grounds identified for cause are, according to Robnett,

---

that the board was required to attempt to fill the vacancy at his request.  *See id.* at 3–4 (citing Ans. Br. App. at A-7, -29, -70).

[62] Ans. Br. at 26–27.

[63] In Robnett's letter opposing Lithos's request for leave to move for summary judgment, he stated, "Discovery is necessary to demonstrate whether Lithos's fellow board members had planned to fire Mr. Robnett when the parties negotiated the seed round and the conversion of Lithos to a Delaware corporation, of which the Repurchase Agreement was an integral part."  D.I. 18 at 5.  Robnett's opposition brief did not follow through under Rule 56(f), as it must.  "This court has repeatedly denied requests for discovery made in opposition to a motion for summary judgment in the absence of a Rule 56(f) affidavit, instead ordering summary judgment in such cases."  *Comet*, 980 A.2d at 1033.

[64] *See Lord*, 748 A.2d at 400–01.

unsound. But as explained, Lithos ended up terminating Robnett at will. It did not terminate him for those identified grounds.[65]

Third, Robnett asserts the covenant implies three specific terms in the Agreement: "(1) that [his] employment would continue indefinitely; (2) that termination decisions would [be] made in good faith; and (3) that once the for 'Cause' notice and cure period has commenced, the Company could not terminate [him] 'at-will' until the 30-day notice and cure period was complete."[66] Delaware's narrow application of the implied covenant in the at-will employment context only supports a claim based on an implied promise of indefinite appointment when the employer allows the employee to assume indefinite employment but "it is, in secret contemplation of the employer, of limited duration."[67] As explained, Robnett has offered no evidence of any such misrepresentation or secret plan.[68]

---

[65] Robnett's arguments that Lithos's grounds for cause were inaccurate do not create a genuine issue of material fact as to whether Lithos fabricated them. *See* Ans. Br. at 15–21.

[66] *Id.* at 27–28.

[67] *Merrill*, 606 A.2d at 102.

[68] Robnett's argument that as a "Founder," "Management Key Holder," "Co-CEO," and "Common Director," he was "led to believe that he would play an important role in the Company's future" does not change the analysis. Ans. Br. at 24. Robnett has not offered evidence of fraud, deceit, or misrepresentation.

In arguing Lithos terminated him in bad faith, Robnett invokes authority addressing bad faith termination designed to deny an employee benefits the employee would have received in a different separation arrangement.[69] Robnett has asserted Lithos purported to terminate him at will only after it realized its grounds for cause were lacking, and only after he notified Lithos that he had "Good Reason" to resign, which would have accelerated his stock vesting. Robnett has not come forward with any evidence supporting those theories. And the undisputed facts show Lithos sent Robnett's termination letter before receiving Robnett's letter claiming he had "Good Reason" to resign.[70]

Robnett also argues Lithos terminated him in bad faith as evidenced by the board's ambush at the June 2 board meeting, withholding an agenda item addressing cause for his own termination.[71] He cites case law speaking to directorial information rights.[72] Even if a violation of a director's information rights could

---

[69] *Id.* at 28 (citing *Sheehan*, 2020 WL 2838575, at *11).

[70] D.I. 22 Ex. F; D.I. 22 Ex. G.

[71] Ans. Br. at 33.

[72] *Id.* at 33–34 (first citing *OptimisCorp v. Waite*, 2016 WL 2585871, at *3 (Del. Apr. 25, 2016) (TABLE) (holding directors are entitled to advance notice of the agenda for a special meeting); then citing *Hall v. Search Cap. Gp., Inc.*, 1996 WL 696921, at *2 (Del. Ch. Nov. 15, 1996) (holding that "[w]hen management communicates with the directors on matters

demonstrate an employee was terminated in bad faith termination, Lithos did not violate Robnett's directorial information rights by not including termination of his employment on the board meeting agenda. Delaware law does not require as a general matter that directors be given advance notice of agenda items for regular board meetings.[73] While a director cannot be affirmatively deceived into attending a regular board meeting,[74] Robnett was not so deceived: he attended voluntarily and circulated his own agenda in advance.[75] Robnett has failed to produce evidence that Lithos terminated him in bad faith.

Finally, Robnett looks to the implied covenant to prevent Lithos from effecting an at-will termination during the for-cause cure period. But, as explained, the Agreement explicitly precludes any term in the Agreement from impairing

---

of concern to the [b]oard collectively, it cannot pick and choose which directors will receive that information")).

[73] *Klaassen v. Allegro Dev. Corp.*, 106 A.3d 1035, 1043–44 (Del. 2014) ("[T]here is no default requirement that directors be given advance notice of the specific agenda items to be addressed at a regular board meeting.").

[74] *Bäcker v. Palisades Growth Cap. II, L.P.*, 246 A.3d 81, 105–06 (Del. 2021) (explaining that while "Delaware law does not require that board members receive notice of the agenda related to regular board meetings," this does not mean "equity provides no remedy where a director has the misfortune of being tricked into attending a regular, as opposed to special, board meeting"); *see also id.* at 107 ("Regardless of the type of meeting or form of communications, Delaware law does not countenance deception designed to manufacture a quorum or otherwise induce director action.").

[75] D.I. 6, Answer ¶ 14; Ans. Br. App. at A-130–33.

Lithos's ability to terminate Robnett at will. Robnett cannot base an implied covenant claim on Lithos's contractually authorized conduct.

Lithos is entitled to a summary judgment on Count II.

### D. Count III Of The Complaint And Count I Of Lithos's Counterclaim

Count III for injunctive relief is a remedy, not a claim. There can be no injunction without a claim, so Count III fails for lack of a breach of the Agreement. Lithos is entitled to summary judgment on this count.

As to Count I of Lithos's counterclaim, there is no dispute that the Agreement is valid and enforceable or that Lithos purchased 2,708,333 shares given a valid at-will termination. The only controversy is whether Lithos terminated Robnett's employment for cause.[76] As explained, it terminated him at will. Lithos is entitled to summary judgment on its counterclaim.

---

[76] D.I. 6, Countercl. ¶ 42(b).

### E.    Attorneys' Fees

Finally, Lithos seeks attorneys' fees under Paragraph 6(k) of the Agreement, which provides that, "[i]f any action at law or in equity (including arbitration) is necessary to enforce or interpret the terms of any of this Agreement, the prevailing Party shall be entitled to reasonable attorney's fees, costs and necessary disbursements in addition to any other relief to which such Party may be entitled."[77] Robnett does not dispute that this action was necessary to enforce or interpret the terms of the Agreement.[78]  As the prevailing party, Lithos is entitled to its reasonable attorneys' fees and costs incurred in this action, including contesting Robnett's allegation that Lithos repurchased 3,250,000 shares—an allegation Robnett did not retract with any clarity until filing its answering brief opposing Lithos's motion for summary judgment.

The parties shall confer regarding the amount of Lithos's award of reasonable attorneys' fees and costs.  If the parties cannot agree on the amount, Lithos shall file a motion supported by a Court of Chancery Rule 88 affidavit.

---

[77] Agr. ¶ 6(k).

[78] *See* Ans. Br. at 39 (opposing attorneys' fees only on the basis that "Lithos cannot prevail on summary judgment").

### III.   CONCLUSION

Lithos's motion for summary judgment is granted as to Counts I–III of the complaint and as to Count I of Lithos's counterclaim.

Sincerely,

*/s/ Morgan T. Zurn*

Vice Chancellor

MTZ/ms

cc:  All Counsel of Record, via *File & ServeXpress*